# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

### NO. 03-11-00037-CV

**Gayle Rosenthal, Appellant**

**v.**

**Sam Boyd, Trustee, as the Legal Representative of the Ethel Davidson Boyd Living Trust; Sam Boyd, Trustee, as the Legal Representative of the Ethel Davidson Boyd Living Trust No. Two; Imad Salem and MWM Design, Inc., Appellees**

### FROM THE COUNTY COURT AT LAW NO. 1 OF TRAVIS COUNTY
### NO. C-1-CV-10-008564, HONORABLE J. DAVID PHILLIPS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Gayle Rosenthal sued Sam Boyd, in his capacity as trustee of a trust, Imad Salem, and, MWM Design, Inc., asserting negligence per se, negligence, and premises liability claims for injuries Rosenthal sustained in a bicycle accident. On appeal, she challenges the trial court's rulings (1) granting Salem and MWM's motion to dismiss her claims for failure to file a certificate of merit and (2) granting Boyd's motion for summary judgment on Rosenthal's claims against him. We will affirm the trial court's judgment.

## BACKGROUND

In September 2008, Rosenthal was riding her bicycle north along Shoal Creek Boulevard near its intersection with Hancock Drive in Austin, Texas. When the bike lane ended, Rosenthal decided to move from the street to the sidewalk using the nearest residential driveway,

which was owned by the trust overseen by Boyd. As Rosenthal steered onto the driveway, she lost control of her bicycle when her front tire hit the driveway edge or "lip," which was one inch higher than is allowed under City of Austin design standards. Specifically, the driveway edge was 1.5 inches high and the City's design standard mandates that curb cuts be no higher than .5 inches high. *See* City of Austin, Texas, Standard Specifications, § 470S.4 (2012) ("The saw cutting of the curb face shall be initiated at an elevation 1/2 inch (12.5 millimeters) above the existing gutter . . . .") (available at http://austintexas.gov/department/online-tools-resources). After she hit the driveway edge, Rosenthal crashed into a nearby retaining wall and suffered serious injuries to her hand and face.

Rosenthal sued Boyd, as trustee of the trust that owns the property, alleging negligence per se, negligence, and premises liability on the grounds that Boyd had failed to properly maintain and improve the property and had allowed a dangerous condition on the property.[1] She also sued Salem and MWM—the engineer and engineering firm hired by the City of Austin to design the sidewalk modifications that the City made in August 2007 to its right-of-way along part of Shoal Creek—claiming negligence per se and negligence on the grounds that Salem and MWM had failed to properly construct, design, and supervise the construction of the driveway entrance.

Salem and MWM filed a motion to dismiss Rosenthal's claims because she failed to include with her petition the certificate of merit required by the civil practice and remedies code

---

[1] It does not appear from the record here that Boyd specially excepted to Rosenthal's negligence claim. *See Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 776 (Tex. 2010) (noting that premises liability, not negligence, is the proper claim for injuries caused by a property owner's failure to make property safe).

2

for claims that are based on the performance of professional engineering services. *See* Tex. Civ. Prac. & Rem. Code Ann. § 150.002(a) (West 2011). In support of their motion to dismiss, Salem and MWM attached an affidavit from Salem explaining the services he and MWM provided to the City on the Shoal Creek sidewalk project and attesting to Salem's status as a licensed professional engineer. Rosenthal responded that she was not required to include a certificate of merit because her claims against Salem and MWM did not arise from the provision of professional engineering services. *See id.*

Meanwhile, Boyd filed a motion for summary judgment attacking Rosenthal's claims against the trust, asserting that the trust had no control or right of control over the driveway edge because that part of the trust property was located within the City's right-of-way easement and that the City, not the trust, had designed and built the driveway edge. In support of the summary-judgment motion, Boyd attached three affidavits, which can be summarized as follows:

- Bill Boyd, the trust beneficiary's son, testified that the City of Austin, not the property owner, constructed the edge of the driveway and that the property owner did not maintain the edge of the driveway.

- James Grant, a licensed surveyor, testified that the edge of the driveway is located within the City of Austin's right of way and that, under City ordinance, the property owner "may not make any alterations to the area where the accident allegedly occurred."

- Imad Salem, named defendant and civil engineer employed by MWM, testified, among other matters, that MWM contracted with the City to perform professional engineering services, including design of the project and construction administration, in connection with the City's Shoal Creek project.

Boyd also attached a notarized letter from the president of a masonry company who stated that the company had built the driveway for the City of Austin in August 2007 as part of the City's sidewalk

3

improvement project in that area. Rosenthal objected to Boyd's summary-judgment evidence, and offered her own affidavit averring that she lost control of her bicycle and sustained injuries because the lip of the driveway was too high. She also included a photograph showing the height of the driveway edge and schematics of the plan for the driveway edge.

After hearings on these motions, the trial court granted Salem and MWM's motion to dismiss and Boyd's motion for summary judgment, and dismissed Rosenthal's claims. On appeal, Rosenthal challenges both rulings, which we address separately.

## CERTIFICATE OF MERIT

Rosenthal challenges the trial court's ruling dismissing her claims against Salem and MWM in two issues. First, she argues that section 150.002 does not require a certificate of merit in cases such as hers where the underlying claims do not implicate an engineer's professional knowledge, education, and experience. Second, Rosenthal argues that the application of section 150.002 to dismiss her claims violates her constitutional right to trial by jury.

**Standard of review**

We review a trial court's decision on a defendant's motion to dismiss under section 150.002 for an abuse of discretion. *Jaster v. Comet II Const., Inc.*, 382 S.W.3d 554, 557 (Tex. App.—Austin 2012, no pet.). A trial court abuses its discretion when it rules arbitrarily, unreasonably, or without regard to guiding legal principles, or without supporting evidence. *See Ford Motor Co. v. Chacon*, 370 S.W.3d 259, 362 (Tex. 2012); *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 800 (Tex. 2002).

4

**Section 150.002**

Civil practice and remedies code section 150.002 requires a plaintiff filing claims against a licensed engineer to file with its petition an affidavit from a third-party engineer if the plaintiff's claims against the engineer arise from the provision of the engineer's professional services—

> In any action or arbitration proceeding for damages arising out of the provision of professional services by a licensed or registered professional, the plaintiff shall be required to file with the complaint an affidavit of a third-party licensed architect, licensed professional engineer, registered landscape architect, or registered professional land surveyor who . . . holds the same professional license or registration as the defendant . . . .

Tex. Civ. Prac. & Rem. Code Ann. § 150.002(a). The statute requires the affidavit, which is called a certificate of merit, to set forth specifically the negligence or other action, error, or omission of the defendant engineer in providing the professional services. *See id.* § 151.002(b). The plaintiff's failure to file the certificate of merit "shall result in dismissal of the complaint against the defendant." *Id.* § 150.002(e).

**Applicability of 150.002**

Rosenthal does not dispute that she failed to file a certificate of merit, but instead argues that her claims against Salem and MWM do not require a section 150.002 certificate of merit because those claims do not implicate an engineer's professional knowledge, education, and experience. *See TDIndustries, Inc. v. Rivera*, 339 S.W.3d 749, 754 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (holding that a claim arises out of the provision of professional services "if the claim

implicates the engineer's education, training, and experience in applying special knowledge or judgment"). Specifically, she argues that measuring the edge of a driveway to determine whether its height complies with City code does not require engineering skills. We disagree with her characterization of the issue here and also with her conclusion that section 150.002 does not apply to her claims against Salem and MWM.

Rosenthal's claims for negligence and negligence per se against Salem and MWM rest on her allegation that the engineers failed "to properly design and construct the sidewalk and driveway." While measuring the height of a driveway edge after its construction may not require engineering knowledge and training, the design of a project adding sidewalks along a residential street where no sidewalks currently exist certainly can, and likely does, implicate an engineer's specialized knowledge or judgment. The occupations code defines the practice of engineering as "the performance of . . . any public or private service or creative work, the adequate performance of which requires engineering education, training, and experience in applying special knowledge or judgment of the mathematical, physical, or engineering sciences to that service or creative work." *See* Tex. Occ. Code Ann. § 1001.003(b)(c) (West 2012). Designing a project to add sidewalks to an existing residential street would require knowledge of relevant city, state, and federal laws, obtaining and incorporating survey information, developing specifications for the project, demolition of existing improvements, and knowledge regarding underground cables, wires, and other utilities. It also requires knowledge of the ground, drainage, slopes, and construction materials and the ability to incorporate this information into the design plans. In short, designing a sidewalk involves specialized engineering knowledge, skills, and training, certainly more than the rudimentary ability

6

to measure. *See id.* (defining the practice of engineering to include, among other things, design of engineering works or systems; development of specifications for engineering works or systems; engineering for construction of real property; and "any other professional service necessary for the planning, progress, or completion of an engineering service"). Accordingly, Rosenthal's case against the engineers—i.e., that she suffered injuries because they failed to properly design the edge of the trust's driveway—is a "proceeding for damages arising out of the provision of professional services." *See* Tex. Civ. Prac. & Rem. Code Ann. § 150.002(a); *TDIndustries*, 339 S.W.3d at 754. We overrule Rosenthal's first issue.

**Constitutionality of section 150.002**

In her second certificate-of-merit issue, Rosenthal complains that, as applied to her claims, section 150.002 violates her constitutional right to a trial by jury. *See* Tex. Const. art. I, § 15 ("The right to a trial by jury shall remain inviolate."). We disagree. The trial court dismissed Rosenthal's claims without prejudice. Therefore, assuming no other bars existed, Rosenthal retained the right to re-file her claims against the engineers and, of course, the right to a jury trial on those claims. Thus, as applied, section 150.002 did not violate Rosenthal's constitutional right to a jury trial.

But even if the trial court had dismissed her claims with prejudice, *see* Tex. Civ. Prac. & Rem. Code Ann. § 150.002(e) ("This dismissal may be with prejudice."), section 150.002 does not violate the constitutional guarantee to a jury trial. In civil cases, the right to a jury trial applies only where there are issues of fact to be resolved. *See, e.g.*, *In re Peterson*, 253 U.S. 300, 310 (1920) ("No one is entitled in a civil case to trial by jury, unless and except so far as there are issues of fact

7

to be determined."). Thus, summary judgments and directed verdicts, which unquestionably take a case out of the hands of a jury, do not violate the right to a trial by jury because those procedures depend on a court's conclusion that there are no issues of fact to be determined. *See Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 336 (1979) (noting that procedural devices such as summary judgment and directed verdict do not violate the federal constitution's right to jury trial in civil cases). Likewise, dismissal of a plaintiff's healthcare liability claim for failure to file an expert report does not violate the right to a jury trial because unless the plaintiff files the required expert report, the plaintiff has not raised fact questions for the jury to resolve. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a) (West 2011) (requiring plaintiff in healthcare liability suit to serve expert medical report on defendants)*; Hebert v. Hopkins*, __S.W.3d__, No. 03–11–00419–CV, 2013 WL 812175, at *8 n.11 (Tex. App.—Austin Mar. 1, 2012, no pet. h.) (affirming constitutionality of expert-report requirement and citing *Schorp v. Baptist Mem'l Health Sys.*, 5 S.W.3d 727, 738 (Tex. App.—San Antonio 1999, no pet.), for proposition that expert-report requirement in health-care liability claims does not violate right to jury trial).

These examples guide our analysis here because, similar to a no-evidence summary judgment and to the expert affidavit in medical liability cases, section 150.002(a) requires a plaintiff to produce evidence—i.e, an expert affidavit that specifically sets forth the negligence of the defendant engineer and the factual basis for the plaintiff's claims against the defendant engineer—or face having her claims dismissed. *See* Tex. Civ. Prac. & Rem. Code Ann. § 152.002(b). In other words, section 150.002(a) simply requires a plaintiff to produce at the outset of the litigation some basis for the trial court to determine that there are issues of fact to be decided. The failure to

8

do so, like a non-movant's failure to produce competent summary-judgment evidence in response to a no-evidence summary-judgment motion or a plaintiff's failure to submit an expert report in healthcare liability claim, means that the plaintiff has failed to raise fact issues for a jury to decide, which in turn means the plaintiff has no right to a jury trial. *See In re Peterson*, 253 U.S. at 310; *Schroeder v. Texas & Pac. Ry. Co.*, 243 S.W.2d 261, 263 (Tex. Civ. App.—Dallas 1951, no writ) (citing *Fidelity & Dep. Co. of Md. v. United States*, 187 U.S. 315, 319–20 (1902)). Here, Rosenthal's right to have a jury determine her claims against the engineers never accrued because she failed to put those claims at issue by filing the requisite certificate of merit supporting her claims. As such, Rosenthal was not denied her right to a trial by jury, and we overrule her constitutional challenge to section 150.002.

## ROSENTHAL'S CLAIMS AGAINST BOYD

In her sole issue regarding her claims against Boyd, Rosenthal argues that the trial court erred in granting summary judgment in favor of Boyd because she "presented disputed issues of fact and law [that Boyd's] evidence failed to resolve." We disagree.

We review the trial court's summary-judgment ruling de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). Summary judgment is proper when there are no disputed issues of material fact and the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W .3d 211, 215–16 (Tex. 2003). Where, as here, a defendant moves for summary judgment under the "traditional" standard, he must meet the initial burden of either conclusively negating at least one essential element of each of the plaintiff's causes of action or conclusively establishing each element of an affirmative defense.

9

*Science Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997). If the defendant meets this initial burden, he is entitled to summary judgment unless the non-movant plaintiff presents summary-judgment evidence raising a genuine issue of material fact as to the challenged element or elements. *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000) (per curiam). When reviewing a summary judgment, we take as true all evidence favorable to the non-movant, and indulge every reasonable inference and resolve all doubts in her favor. *Id.*; *Nixon*, 690 S.W.2d at 549.

Boyd's summary-judgment motion asserted that the trust was not liable as a matter of law because the trust had no control or right of control over the edge of the driveway at issue in this case. In support of his motion, Boyd offered summary-judgment evidence establishing that the edge of the driveway was located in the City of Austin's right-of-way along Shoal Creek, that the driveway edge was not part of the area that the trust maintained, and that the trust did not design or construct the driveway edge. In response, Rosenthal did not controvert or otherwise dispute Boyd's summary-judgment evidence. Instead, she offered her own affidavit asserting where, how, and why the bicycle accident occurred, a photograph of the driveway edge showing that it was 1.5 inches high, and schematics of the City's plan for the driveway edge.

The threshold question in a negligence case is whether the defendant owes a legal duty to the plaintiff. *See Nabors Drilling, U.S.A., Inc. v. Escoto*, 288 S.W.3d 401, 404 (Tex. 2009) (duty in negligence claim); *Western Invs., Inc. v. Urena*, 162 S.W.3d 547 (Tex. 2005) (duty in premises-liability cases). The existence of a duty is generally a question of law for the court, although in some instances it may require the resolution of disputed facts or inferences by the

finder of fact. *See Nabors*, 288 S.W.3d at 404. Here, Boyd's uncontroverted and undisputed summary-judgment evidence established that the City of Austin owned the right-of-way where the driveway edge was located. Further, Austin city code prohibits anyone from building a structure or making improvements in the City's right-of-way. *See* Austin, Tex., Austin City Code ch. 30-3, § 30-3-22 (2013) ("[A] person may not erect a structure or make an improvement in a reserved right-of-way."); *see also id.* § 30-3-21(A) (providing for City-reserved rights-of-way along roadway); *id.* § 30-1-21(65) (Right-of-way "means land dedicated or reserved for streets, utilities, or other public facilities."). The duty of a premises owner to persons on his property arises from control of the premises; the duty does not extend beyond the limits of the premises owner's control. *See Dixon v. Houston Raceway Park, Inc.*, 874 S.W.2d 760, 762 (Tex. App.—Houston [1st Dist.] 1994, no writ) (citing *Grapotte v. Adams*, 111 S.W.2d 690, 691 (Tex. 1938)). A person who has transferred possession or control of the premises to another—as the trust here "transferred" the right-of-way easement to the City—owes no duty to those persons who access the right-of-way or easement. *See Reyna v. Ayco Dev. Corp.*, 788 S.W.2d 722, 724 (Tex. App.—Austin 1990, writ denied) (holding that property owner had no duty to warn against or take action to relieve a dangerous condition created by the City of Austin on its easement). Moreover, the trust had no right to interfere with or even maintain the City's right-of-way. *Id.* Accordingly, because the trust owed no duty to Rosenthal—an element of her claim—Boyd was entitled to summary judgment on her claims unless Rosenthal's summary-judgment evidence raised a question of fact. *See City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 687 (Tex. 1979).

11

Rosenthal, who does not dispute that the driveway edge lies in the City's right-of-way or that the City designed the driveway edge, argues that the trust nevertheless had a duty to her because it had some control over the City's plans for refurbishing the sidewalks along Shoal Creek arising from the City's offer to consult with area property owners regarding the City's plans to refurbish the sidewalks in the area. In further support of this argument, Rosenthal asserts that the property owners in the Shoal Creek area, including the trust, were able to choose the particular design used on their property. But she provided no summary-judgment evidence—not even unsupported conclusions in her own affidavit—to refute Boyd's evidence that the City, not the trust, controlled the driveway edge and the modification of the sidewalks along Shoal Creek. Nor did she provide any evidence to support her assertions that the trust and other property owners in the area had some control over the design and construction of the modification project along Shoal Creek.[2] Instead, she provided her own affidavit testimony that simply reasserted her contention that the accident occurred because the edge of the driveway was too high. She did not dispute that the area was within the City's right of way or that City code prohibited the trust from making changes to the driveway edge. Accordingly, she did not raise a question of fact sufficient to overcome Boyd's entitlement to summary judgment.

Rosenthal also asserts that fact questions remain regarding who benefitted from the City's driveway construction, who controlled the driveway construction, and when Salem and MWM

---

[2] Rosenthal attached a document to her appellate brief that purports to be a summary of a City letter to area residents, but that letter is not included as part of her response to Boyd's summary-judgment motion. As such, we cannot consider it in our review here. *See* Tex. R. Civ. P. 166a(c). Regardless, we note that the contents of the letter do not refute that the City had a right-of-way here; if anything, the letter emphasizes the City's control over the area at issue here.

had a contract with the City. But assuming these allegations are true, they do not inform our decision here. First, whether the trust benefitted from the sidewalk does not limit Boyd's proof that the City controlled the edge of the driveway and Rosenthal provides no authority to the contrary. *See Reyna*, 788 S.W.2d at 724. Second, Boyd's uncontroverted evidence established that the City had a right-of-way in the area where the edge of the driveway was located and that the trust did not construct the edge of the driveway. *See id.* Finally, whether or when Salem had a contract with the City does not relate to whether the City controlled the driveway edge.

Rosenthal argues that section 75.002(d) of the civil practice and remedies code created a duty for Boyd—as an "occupier" of the City's property—to keep the premises free from dangerous conditions. But that provision requires gross negligence, malicious intent, and bad faith on the part of a property occupant; whereas Rosenthal's petition against Boyd alleges simple negligence. *See* Tex. Civ. Prac. & Rem. Code Ann. § 75.002(d) (West 2011). Accordingly, to the extent we could even apply section 75.002, it does not inform our decision here.

Finally, Rosenthal argues that Boyd's summary-judgment evidence was not competent because it contained hearsay and unsworn testimony. We agree with Rosenthal that the letter from the president of the masonry company was not competent summary-judgment evidence because it was not offered in proper affidavit form, *see* Tex. R. Civ. P. 166a(f), but that letter was not necessary to establish that the City controlled the driveway edge. Boyd's affidavit from the surveyor, which is in proper affidavit form, establishes that the edge of the trust's driveway was located within the City's right-of-way along Shoal Creek. Thus, at worst, the masonry company letter's inclusion in the evidence was harmless. *See* Tex. R. App. P. 44.1(a) ("harmless error" rule). And regarding

13

her assertions that Boyd's summary-judgment evidence contains hearsay, Rosenthal does not specifically describe what she considers as hearsay. We overrule Rosenthal's issue.

## Conclusion

Having overruled each of Rosenthal's issues on appeal, we affirm the trial court's summary judgment.

_____

Jeff Rose, Justice

Before Justices Puryear, Pemberton, and Rose

Affirmed

Filed:   May 1, 2013